# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
1/27/23
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

iPHONE MODEL 12 WITH SPARKLE CASE SEIZED FROM BROOKE ASHLIE MARTIN

Case No. 3:23-mj-32

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Southen__ District of __Ohio__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001 | Making false statements to a federal agent. |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Kenneth Pitney, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __Telephone__ *(specify reliable electronic means)*.

Date: January 27, 2023

City and state: Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF iPHONE MODEL 12 WITH SPARKLE CASE SEIZED FROM BROOKE ASHLIE MARTIN ON JANUARY 20, 2023, AS FURTHER DESCRIBED IN ATTACHMENT A | Case No. 3:23-mj-32 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, KENNETH PITNEY, after being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of certain property, to wit: an electronic device (more specifically described in Attachment A) which is currently in law enforcement care, custody and possession, and the extraction from that property of electronically stored data and information (more specifically described in Attachment B).

2. I am a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since 2013. I am currently assigned to the Cincinnati Group I Field Office located in Cincinnati, Ohio. I previously graduated from the ATF Special Agent Basic Training Course, the Ohio State Highway Patrol Academy and the Federal Law Enforcement Training Center Criminal Investigators Training Program. I have previously participated in a wide-variety of criminal investigations, to include: investigations relating to the illegal possession of firearms, the illegal purchase of firearms, the illegal sale of

firearms, the illegal trafficking of firearms, the illegal possession of controlled substances and the illegal sale of narcotics.

3. The information contained in this affidavit is derived from your Affiant's personal knowledge of the facts and circumstances surrounding subject investigation, as well as additional information received from other law enforcement personnel familiar with the investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause to justify the issuance of the requested search warrant, I have not included every fact known to me relevant to subject investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a cellular telephone which your Affiant took into custody on or about January 20, 2023 on behalf of the ATF pursuant to a search warrant issued by this Court on January 19, 2023 (*See* Case No. 3:23-mj-17). This cell phone has since remained in law enforcement care, custody and control in an evidence locker maintained at the Montgomery County Sheriff's Office (MCSO), 345 W. Second Street, Dayton, Ohio. The subject property is further described as follows:

 a. One (1) iPhone model 12 cellphone in a sparkle case (hereinafter, identified as the "TARGET CELLPHONE").

5. The applied-for search warrant would authorize the forensic examination of the TARGET CELLPHONE for the purpose of searching and identifying certain electronically stored data and information more particularly described in Attachment B.

**PROBABLE CAUSE**

6. During the course of subject investigation, your Affiant has conducted numerous witness and subject interviews. These interviews have provided credible information that supports and establishes the following facts set forth in this affidavit.

7. On or about January 16, 2023, the Federal Bureau of Investigations (FBI) received a Threat to Life Complaint from persons identified to be Gerald Wildermuth, Jr. and Melissa Wildermuth of Gloversville, N.Y. The information provided concerned a purported threat made against their son Alexander Steven Gary HERNANDEZ (hereinafter referred to as "HERNANDEZ") who resides in the Greater Dayton, Ohio-area. HERNANDEZ was previously the subject of an ATF criminal investigation which focused on his association with a local Dayton-Ohio based group identified as the Thug Riders Motorcycle Club (MC). The Thug Riders MC is known by law enforcement authorities to be a violent organization which has purportedly engaged in various illegal activities to include shootings, narcotics trafficking, firearms trafficking, extortion, and other violent acts. The said ATF investigation specifically focused on a September 26, 2021 shooting/homicide incident involving members of the Thug Riders Motorcycle MC that occurred at or near 3224 Lodge Ave., in Harrison Twp, Ohio. The Wildermuth's' complaint alleged that HERNANDEZ's ex-girlfriend, a person identified as Brooke Ashlie MARTIN, (hereinafter referred to as "MARTIN") posted to her Facebook social media page, certain copies of various documents gleaned from the ATF Report of Investigation (ROI) involving the aforesaid criminal investigation. The posted documents purportedly discussed the activities of HERNANDEZ and various other members of the Thug Riders MC relevant to the shooting/homicide incident. It is believed that said documents were part of a confidential Federal Rule of Criminal Procedure 16 discovery packet that federal prosecutors

3

previously provided to HERNANDEZ's federal defense counsel in Case No. 3:22-cr-0001. The Specific ATF ROIs in question were determined to in fact be ROIs #2 and #3 in ATF case no. 773011-22-0022 captioned "HERNANDEZ, Alexander Steven Gary (Thug Riders)" (hereinafter referred to as "THE DOCUMENTS").

8. On October 26, 2022, HERNANDEZ pled guilty to a superseding bill of information in Case No. 3:22-cr-0001 that consisted of a single count of unlawful transfer of handgun ammunition to a juvenile in violation of 18 U.S.C. § 922(x)(1)(B). HERNANDEZ is scheduled to be sentenced before U.S. District Judge Michael J. Newman on January 31, 2023.

9. On or about January 17, 2023, the said FBI Threat to Life Complaint was forwarded to your Affiant. Upon receipt and review of this complaint, I determined that HERNANDEZ was then incarcerated at the Montgomery County Jail due to a January 16, 2023 arrest for violating a Miamisburg, OH Municipal Court Temporary Protection Order (TPO). This TPO was issued in order to protect MARTIN. Based upon HERNANDEZ's state court arrest, on January 17, 2023, U.S. Magistrate Judge Peter B. Silvain, Jr. issued a federal arrest warrant against HERNANDEZ based upon a bond violation petition filed by U.S. Pretrial Services Officer Joshua Bohman.

10. On January 17, 2023, your Affiant interviewed HERNANDEZ at the Montgomery County Jail. He informed me that both he and MARTIN previously cohabited in a local residence. The couple first engaged in domestic disputes dating back to the early November 2022 time frame. HERNANDEZ indicated that MARTIN is the biological mother of HERNANDEZ's child. During said time frame, MARTIN apparently discovered HERNANDEZ's discovery packet which contained copies of THE DOCUMENTS relating to his

4

federal case.  HERNANDEZ further advised that MARTIN apparently took certain photos of individual pages of THE DOCUMENTS using her cell phone camera.   HERNANDEZ further stated that between January 13, 2023 and January 16, 2023, MARTIN apparently forwarded copies of THE DOCUMENTS to various members of the Thug Riders MC and additionally posted copies of THE DOCUMENTS on her Facebook social media page.

11. On January 17, 2023, your Affiant conducted a recorded telephone interview of MARTIN. During this interview, I directly asked MARTIN whether: (a) she had sent copies of THE DOCUMENTS to anyone, and (b) if she had posted THE DOCUMENTS on her Facebook page. MARTIN denied doing either.  At this point, I advised MARTIN that it was a federal crime to lie to a federal agent about such matters.  I thereupon asked if she wished to change her prior statement. MARTIN stated she did not, and further adamantly responded that she "would never do that to Alex". I concluded her interview and reiterated that she could contact me if she desired to change her statement. MARTIN did subsequently telephone me continuing to deny that she ever posted any of THE DOCUMENTS on her Facebook page, or sent them to any third party.

12. On January 18, 2023, your Affiant obtained possession of HERNANDEZ's cellphone together with his consent to search. Within the cellphone I located various screen shots of Facebook postings made on an account listed in the name of "Brooke Martin".  These screen shots included a profile photograph of MARTIN. The screen shots also included photos of THE DOCUMENTS. In one of the posted photos of THE DOCUMENTS, a female's hand with painted red fingernails appeared.

As to **BROOKE ASHLIE MARTIN** Utilizing a Cellular Telephone

13. A forensic extraction of stored data and information was performed on HERNANDEZ's cellphone. A review of this forensic extraction revealed that HERNANDEZ repeatedly communicated with MARTIN via messaging apps and voice communications. On January 17, 2023, your Affiant telephonically contacted MARTIN by calling her at 937-797-4808. On January 18, 2023, I reviewed certain stored telephone files on HERNANDEZ's current cellphone which revealed a recording of certain text and multimedia messages received from the same phone number 937-797-4808. The said multimedia messages depict photographs of a letter written to "Brooke" which bear like and similar images to the female's hands with red nail polish described in paragraph 12 above.

14. On January 20, 2023, at approximately 10:44 AM, your Affiant executed a federal search warrant (Case No. 3:23-mj-17) at 121 East Circle Drive, West Carrollton, Ohio seizing the TARGET CELLPHONE from MARTIN's person. At the time of said seizure, I observed MARTIN's fingernails were painted red in a like and similar manner as the female fingers depicted in the paragraph 12 above. On this occasion, MARTIN once again emphatically reiterated that she had not lied to me about posting copies of THE DOCUMENTS on her Facebook page or forwarding pictures of THE DOCUMENTS to any third parties. The TARGET CELLPHONE has been remained in law enforcement care, custody and control since its seizure.

15. Subsequent to your Affiant's seizure of the TARGET CELLPHONE, I received a phone call from an individual identifying himself as Rex McPherson who was MARTIN's father. During this phone call Mr. McPherson attempted to learn how much "trouble" MARTIN was in,

6

and further inquired what could possibly be done to get her out of that "trouble". I explained that to Mr. McPherson that MARTIN was being investigated for lying about taking pictures of THE DOCUMENTS and posting them on her social media and also sending them to certain third parties. Mr. McPherson responded that it should be very easy to prove because "the pictures are on her phone".

16. Based on your Affiant's prior law enforcement training and experience, I know that Facebook is an internet-based service with a mobile companion application (hereinafter referred to as an "app") which can be installed on mobile electronic devices that have an internet connection. I further know that these apps have the ability to maintain copies of stored data posted using other apps with the same account. I also know that Facebook has a companion app known as Facebook Messenger or Messenger which facilitates voice, text, and multimedia messaging between users. Therefore, any mobile device with the capability of an internet connection could have the Facebook or Messenger apps installed allowing it to be used to upload photographs of THE DOCUMENTS.

17. Based on your Affiant's prior law enforcement training and experience, I believe that the aforementioned facts establish probable cause to believe that the TARGET CELLPHONE may contain evidence of violations of federal law, to wit: 18 U.S.C. § 1001.

**TECHNICAL TERMS**

18. Based on your Affiant's prior law enforcement training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call

7

log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing

8

       computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19. Based on your Affiant's prior law enforcement training, experience, and research, I know that the TARGET CELLPHONE has the capability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. I also know based upon my prior law enforcement training and experience examining stored electronic data and information on devices such as the TARGET CELLPHONE, one can discover, among other things, evidence indicating who may have previously possessed and/or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on your Affiant's prior law enforcement training, experience, and research, I know that electronic devices, such as the TARGET CELLPHONE, has the ability to electronically store data and information for long periods of time. Similarly, things that have been previously viewed via the internet are typically stored for an extended time period. This stored data and information can sometimes be recovered with forensics examination.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate, review and search not only electronically stored data and information that might serve as direct evidence of the crime described on the warrant, but also forensic evidence that may establish how the TARGET CELLPHONE was used, the purpose of its use, who used it, and when. Based on the aforesaid facts set forth in this affidavit, your Affiant believes there is probable cause to believe that forensic electronic stored date, information and evidence might exist on the TARGET CELLPHONE because:

   a. Data found on the storage medium can provide evidence of a file that was once on the storage medium but has subsequently been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on an electronic device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw certain conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying electronically stored data and information on a storage medium is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

   f. Your Affiant knows that when an individual uses an electronic device to facilitate a violation of federal law, that individual's electronic device will commonly serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. Based upon my prior law enforcement my training and experience, I believe that the TARGET

CELLPHONE may contain: stored data and information that may establish how it was used; the data that was sent or received; and other evidence that may indicate the nature and elements of the subject criminal offense.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant requests permission to exam the TARGET CELLPHONE consistent with the requested warrant. This examination may require authorities to employ certain technical techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the TARGET CELLPHONE to human inspection in order to determine whether there is stored data and information as described and contemplated by the warrant.

23. *Manner of execution.* Because this requested warrant seeks only permission to examine the TARGET CELLPHONE which is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any physical premises. Consequently, your Affiant submits there is reasonable cause for the Court to authorize execution of the requested warrant at any time in the day or night.

**CONCLUSION**

24. Your Affiant further submits that this affidavit supports probable cause justifying the issuance of the requested search warrant authorizing the forensic examination of the TARGET CELLPHONE described in Attachment A, in order to search, an seize the items described in Attachment B.

Respectfully submitted,

KENNETH PITNEY
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to ~~before me~~ by reliable electronic means (telephone) on January 27, 2023.

Caroline H. Gentry
United States Magistrate Judge

12

## ATTACHMENT A

The property to be searched is described as follows:

a. T ARGET CELLPHONE – iPhone model 12 in sparkle case (photographs attached)




(identified as the "TARGET CELLPHONE")

The TARGET CELLPHONE is currently maintained in secure law enforcement custody at the MCSO, 345 W. Second Street, Dayton, Ohio.

This warrant authorizes the forensic examination of the TARGET CELLPHONE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Items to be seized*

1. All records on the TARGET CELLPHONE described in Attachment A that relate to violations of, 18 U.S.C. § 1001; including:

    a. Evidence of possession of THE DOCUMENTS;
    b. Evidence of messaging regarding THE DOCUMENTS;
    c. Records and information relating to images of THE DOCUMENTS;
    d. Records and information relating to messages concerning THE DOCUMENTS;
    e. Records and information relating to sharing of THE DOCUMENTS;
    f. Records and information relating to access to communication websites and apps (e.g., Facebook);
    g. Records and contact information relating to identification of any persons with whom THE DOCUMENTS were shared;

2. Evidence of user attribution showing who used or owned the TARGET CELLPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

4. Records of location information, including Global Positioning System ("GPS") data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.